UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRAVELERS PROPERTY & CASUALTY
INSURANCE COMPANY                                                         Civil Action No: CV-11-2066
a/s/o Loehmanns Inc., and other Interested Insured's
Under the Policy of Insurance

                                                    Plaintiffs,          **AFFIDAVIT IN**
                                                                         **SUPPORT OF MOTION**
              -against-

AGG CREPERIE d/b/a XO CREPERIE,
2027 EMMONS AVENUE, LLC, 2027 LLC,
HIGH RISE FIRE PROTECTION CORP. d/b/a
HIGH RISE FIRE & SECURITY,
CHIEF FIRE CONTRACTORS CO., INC.
METRODIAL CORPORATION, AND
KORA DEVELOPERS

                                        Defendants.
------------------------------------------------------------------X
STATE OF NEW YORK      )
                       )  ss:
COUNTY OF KINGS        )

    **ROBERT AIELLO,** being duly sworn, deposes and says:

    1.    I am the Vice-President – of defendant High Rise Fire Protection Corp. ("High

Rise"). Our corporate office is located at 144 21st St., Brooklyn, New York. I make this Affidavit

in support of the motion of High Rise for summary judgment pursuant to the Federal Rules of

Civil Procedure §56(a) as to the plaintiff's claims and defendant's cross-claims asserted against

High Rise.

    2.    The business of High Rise is to install, maintain and inspect building alarm

systems and to provide alarm system monitoring services for residential and commercial

properties.

    3.    An Alarm Maintenance and Service Agreement was made and entered into

effective on the 1st day of April, 2009 by and between High Rise and Kora Developer LLC as

managing agent for owner 2027 LLC. The Alarm Maintenance and Servicing Agreement has been annexed hereto as **Exhibit "A"**. Pursuant to the agreement, High Rise maintained and serviced the alarm system located at the premises 2027-2063 Emmons Ave, Brooklyn, New York. This contract was in full force and effect on November 21, 2009.

4.      A Central Office Monitoring Contract was also entered into on the 1st day of February, 2009. The Central Office Alarm Monitoring Contract has been annexed as **Exhibit "B"**. This contract was entered into between High Rise and Emmons Realty Corp., the prior managing agent for owner 2027 LLC and/or 2027 Emmons Ave LLC and was the contract under which High Rise supplied alarm monitoring service for the premises. This contract was also in full force and effect on November 21, 2009.

5.      As a material part of the contract between High Rise and the owner and/or owner's  agent, the parties agreed to a provision by which the parties agreed to a limitation of liability and a waiver of liabilities as to High Rise in respect to claims for damages, losses, liabilities, costs and expense and as to lawsuits of the type brought by third parties and alleged to have arisen out of the work of High Rise. See Paragraphs 11, 12 and 17, respectively, of **Exhibit "A"**.

6.      The agreement between the parties also provided for a waiver of liability of High Rise to the extent that the owner was reimbursed by fire insurance for damages sustained due to a loss insured by fire insurance. See **Exhibit "A"**, Paragraph 13.

7.      The contracts entered into with High Rise in relevant part specifically state as follows:

## "AGREEMENT MADE THE EFFECTIVE DATE SET FORTH HEREIN BETWEEN HIGH RISE FIRE PROTECTION CORP. (THE CONTRACTOR) AND THE SUBSCRIBER HEREWITH NAMED

11.     It is mutually agreed that the Contractor is not an insurer, that the payments hereinafter set forth are based solely on the value of the Services provided for herein: that from the nature of services to be rendered it is impracticable and extremely difficult to fix actual damages, if any; which may proximately result from a failure on the part of the Contractor to perform any of its obligations hereunder: that in case of the failure of the Contractor to perform any of its obligations hereunder, and a resulting loss to the Subscriber, the Contractor's liability shall be limited to and fixed at a sum equal to ten percent of the Annual Charge but not less than Fifty Dollars, as liquidated damages, and not as a penalty and this liability shall be exclusive. The Contractor assumes no liability for delays from strikes or other causes beyond its control. In the event this agreement is breached or terminated by the subscriber, the Contractor shall receive, as liquidated damages (and not as a penalty), an amount equal to the total of sixty-five percent of the aggregate monthly service charge then in effect, multiplied by the number of months remaining in the term of this agreement (including the renewal period). The Contractor shall also be paid costs, including reasonable attorney's fees, incurred by the Contractor in enforcing its rights under this agreement.

12.     The Contractor and its subcontractors shall in no event be liable to the Subscriber, any successor in interest or assignee, for any consequential, incidental indirect, special or punitive damages arising out of this agreement or any branch thereof, or any services performed or equipment or materials furnished relative hereto, whether based upon loss of use, lost profits or revenue, interest, lost goodwill, work stoppage, impairment of other goods, loss by reason of shutdown or non-operation, increased expenses of operation, cost of purchase of replacement power of claims of subscriber or customers of Subscriber for service interruption, or whether or not such loss or damage is based on contract, warranty, negligence, indemnity, strict liability or otherwise. The Contractor may assign this agreement without prior written consent from the Subscriber.

13.     To the extent any loss and/or damage is recoverable by insurance proceeds under Subscriber's insurance policies, Subscriber waives its and its insurers' rights to recover for such loss and/or damage against the Contractor…

17.     The Contractor will not be responsible for the correction of any defects from unauthorized extensions or modifications to the system, nor shall be required to correct improper connection of equipment or devices connected to the system, or to correct any defects within such equipment or devices in excess of items listed herein, and labor and materials required for correction of such defects will be paid for by the Subscriber on a time and material basis in accordance with the rates of labor and material currently in effect at the time of such service. It is agreed that the contractor is the sole fire alarm vendor for the building. If at any time the system is maintained, serviced or provided equipment from another fire alarm vendor then the contractor cannot accept liability for the functionality of the system and will have the sole option to cancel its present services upon written notice."

* * *

## "CENTRAL OFFICE MONITORING CONTRACT

6.   NO WARRANTIES OR REPRESENTATIONS: SUBSCRIBER'S EXCLUSIVE REMEDY: HIGH RISE does not represent nor warrant that the fire/security equipment and central office monitoring will prevent any loss, damage or injury to person or property, by reason of burglary, theft, hold-up, fire or other cause, or that the fire/security equipment will in all cases provide the protection for which it is installed or intended. Subscriber acknowledges that HIGH RISE is not an insurer, and the Subscriber assumes all risk for loss or damage to Subscriber's premises or its contents. HIGH RISE has made no representations or warranties, and hereby disclaims any warranty of merchantability or fitness for any particular use. Subscriber's exclusive remedy for HIGH RISE's default hereunder is to require HIGH RISE to repair or replace, at HIGH RISE's option, any equipment covered by this agreement which is non-operational.

7.   EXCULPATORY CLAUSE: Subscriber agrees that HIGH RISE is not an insurer and no insurance coverage is offered herein. The fire/security equipment is designed to reduce certain risks of loss, though HIGH RISE does not guarantee that no loss will occur. HIGH RISE is not assuming liability, and, therefore shall not be liable to Subscriber for any loss, personal injury or property damage sustained by Subscriber as a result of burglary, theft, hold-up, fire, equipment failure, smoke, or any other cause, whatsoever, regardless of whether or not such loss or damage was caused by or contributed to by HIGH RISE's negligent performance, failure to perform any obligation or strict products liability. Subscriber releases HIGH RISE from any claims for contribution, indemnity or subrogation.

8.   LIMITATION OF LIABILITY: Subscriber agrees that should there arise any liability on the part of HIGH RISE as a result of HIGH RISE's negligent performance to any degree, failure to perform any of HIGH RISE's obligations, equipment failure or strict products liability, that HIGH RISE's liability shall be limited to the sum of six times the monthly payment at time is fixed or the sum of $250.00 whichever is greater. If Subscriber wishes to increase HIGH RISE's maximum amount of HIGH RISE's limitation of liability, Subscriber may, as a matter of right, at any time, by entering into a supplemental contract, obtain a higher limit by paying an annual payment consonant with HIGH RISE's increased liability. This shall not be construed as insurance coverage.

18.   INSURANCE: The Subscriber shall maintain a policy of public liability, property damage, burglary and theft insurance under which HIGH RISE is named as insured, and under which the insurer agrees to indemnify and hold HIGH RISE harmless from and against all costs, expenses including attorneys' fees and liability arising out of or based upon any and all claims, injuries and damages arising under this agreement, including, but not limited to, those claims, injuries and damages contributed to by HIGH RISE's negligent performance to any degree or its failure to perform any obligation. The minimum limits of liability of such insurance  shall be one million dollars for any injury or death, and property damage, burglary and theft coverage in an amount necessary to indemnify Subscriber for property on its premises. HIGH RISE shall not be responsible for any portion of any loss or damage which is recovered or recoverable by the

Subscriber from insurance covering such loss or damage or for such loss or damage against which the Subscriber is indemnified or insured.

19.    INDEMNITY/WAIVER OF SUBROGATION RIGHTS/ASSIGNMENTS: Subscriber agrees to and shall indemnify and hold harmless HIGH RISE, its employees, agents and subcontractors, from and against all claims, lawsuits, including those brought by third-parties or by Subscriber, including reasonable attorney's fees and losses, asserted against and alleged to be caused by HIGH RISE's performance, negligence or failure to perform any obligation under this agreement. Parties agree that there are no third party beneficiaries of this contract. Subscriber on its behalf and any insurance carrier waives any right of subrogation Subscriber's insurance carrier may otherwise have against HIGH RISE or HIGH RISE's subcontractors arising out of this agreement or the relation of the parties hereto. Subscriber shall not be permitted to assign this agreement without written consent of HIGH RISE. HIGH RISE shall have the right to assign this contract and shall be relieved of any obligations herein upon such assignment. HIGH RISE shall be permitted to assign this contract and upon such assignment. HIGH RISE shall be permitted to assign this contract and upon such assignment shall have no further obligation hereunder."...

* * *

8.    On November 21, 2009, a fire occurred at the premises owned by 2027 LLC in the spaced leased to tenant AGG Creperie. The premises was equipped with an automatic (wet) sprinkler system. The system was equipped in part, with a control valve monitored by a tamper switch. If the valve was closed, then by design the control valve/tamper switch should have sent a signal indicating a closed valve. It is not disputed that no appropriate signal was sent by the alarm equipment to indicate closure of the valve. It is contended by the plaintiff that maintenance and monitoring of this device arose under the annexed contract(s), with High Rise. It is asserted that the sprinkler apparatus in the Creperie restaurant did not operate at the time of the fire as the valve was closed. High Rise Fire had no knowledge of the valve being closed or that the tamper switch on the valve was not working properly. In fact, investigation revealed that the valve in question had been enclosed in a drop ceiling above a restaurant refrigerator years prior to the fire and was thus hidden from view.

9.     It is contended by plaintiff (and denied by High Rise) that defendant High Rise was negligent in its maintenance and inspection of this equipment so as to cause loss and damages to plaintiff in the ensuing fire of November 21, 2009. While defendant High Rise denies that it was negligent, it is respectfully submitted that plaintiff's claims are nonetheless barred by the express terms contained in the annexed service contracts between the parties.

<u>Conclusion</u>

10.     The Alarm Maintenance Servicing Agreement and the Monitoring Agreement set forth all consideration mutual promises, covenants and representations of the parties and govern the duties, obligations and liabilities of the parties. As such, the express terms of the contractual agreements act to bar the claims asserted by plaintiff and cross-claimants either in whole, or part.


ROBERT AIELLO


Sworn to before me on the
29 day of August, 2013


Notary Public


**SOLAIMAN AYOUB**
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01AY6140998
Qualified in Nassau County
Commission Expires February 13, 2014