UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
TRAVELERS PROPERTY &
CASUALTY INSURANCE
COMPANY, a/s/o Loehmanns Inc. and
other Interested Insureds Under the
Policy of Insurance,

     Plaintiff,     **MEMORANDUM AND ORDER**
               No. 11-CV-2066 (FB) (MDG)

 -against-

AGG CREPERIE d/b/a XO CREPERIE;
2027 EMMONS AVENUE, LLC; 2027
LLC; HIGH RISE FIRE PROTECTION
CORP. d/b/a HIGH RISE FIRE &
SECURITY; CHIEF FIRE
CONTRACTORS CO. INC;
METRODIAL CORPORATION; and
KORA DEVELOPERS, LLC,

     Defendants.
------------------------------------------------x

*Appearances*
*For the Plaintiff:*
ROBERT C. SHEPS, ESQ.
Sheps Law Group, P.C.
35 Pinelawn Road, Suite 106E
Melville, New York 11747

*For Defendant High Rise Fire Protection Corp.:*
KENNETH R. MAGUIRE, ESQ.
Ken Maguire & Associates, PLLC
950 Franklin Avenue, Suite 101
Garden City, New York 11530

*For Defendant Chief Fire Contractors Co. Inc.:*
PHILIP C. SILVERBERG, ESQ.
STEVEN A. TORRINI, ESQ.
Mound Cotton Wollan & Greengrass
One Battery Park Plaza
New York, New York 10004

**BLOCK, Senior District Judge:**

Loehmann's clothing store suffered property damage as a result of a fire in an adjacent store. Having reimbursed its insured for the loss, Travelers Property & Casualty Insurance Company ("Travelers") now seeks to recover as Loehmann's subrogee. It initially sued the building owner, management company and neighboring tenant, but subsequently voluntarily dismissed the claims against the owner and management company. The claims against the tenant remain pending.

In addition, Travelers sued the entities contractually responsible for inspecting the building's sprinkler and alarm systems. Those two defendants have each moved for summary judgment on the ground that their contractual obligations did not give rise to a duty of care to Loehmann's. For the following reasons, the Court agrees and grants the motions.[1]

**I**

The following facts are undisputed.

Loehmann's is the anchor store at Loehmann's Seaport Plaza, a strip mall in Sheepshead Bay, Brooklyn. A restaurant owned and operated by AGG Creperie

---

[1] As is typical in these cases, Travelers's suit has engendered various cross-claims among the defendants. The Court has considered all parties' submissions in connection with the pending motions, and its conclusions apply equally to Travelers' claims and the cross-claims.

2

("AGG") occupies the premises next door. The mall is owned by 2027 LLC ("2027") and managed by Kora Developers LLC ("Kora").

On November 21, 2009, a fire broke out at AGG. Although the mall was protected by a building-wide sprinkler system, the system failed to activate, leaving the fire to burn unchecked until a passerby alerted the authorities. By the time the fire was extinguished, Loehmann's store and inventory had suffered extensive smoke and water damage. Travelers paid $1,196,896.60 on the property-damage claim.

A post-fire investigation revealed that a valve in AGG's part of the sprinkler system had been turned off. In addition, the valve had been covered by a drop ceiling and was, therefore, not visible. Although there is no evidence as to when the valve was covered, the parties agree that it was sometime before AGG's tenancy began in 2002.

The New York City Fire Code requires the owners of buildings with sprinkler systems to retain qualified individuals to inspect the system on a monthly basis. Since 2004, 2027 has retained Chief Fire Contractors Co, Inc. ("Chief Fire") to conduct those inspections. Chief Fire agreed to perform the inspections for an annual fee of $425. The contract specifically excluded "maintenance, alterations, repairs and replacements" and, in addition, limited Chief Fire's total

liability—"whatever the cause and whether or not due to negligence"—to $100. Aff. of Roy Wildenberger, Ex. 1.

In addition, the Fire Code required 2027 to monitor valves and other aspects of the sprinkler system through an electronic alarm system. High Rise Fire Protection Corp. ("High Rise") contracted with Kora, on behalf of 2027, to provide a centrally-monitored alarm service in exchange for monthly payment. The contract contained provisions disclaiming any guarantees and limiting High Rise's total liability to six times the monthly payment. *See* Aff. of Robert Aiello, Ex. B High Rise also agreed to perform monthly tests and inspections of the alarm system in exchange for an additional fee of $3,000 per year. This contract, too, disclaimed all liability in excess of a stated maximum (in this instance, 10% of the annual fee). *See id.*, Ex. A.

## II

Tort liability depends upon a duty of care, and the existence of a duty is "a question of law requiring courts to balance sometimes competing public policy considerations." *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 139 (2002). Since jurisdiction in this case is premised on diversity, the Court is bound by the pronouncements of the New York Court of Appeals. *See Licci ex. rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013).

4

One such pronouncement is that "a contractual obligation, standing alone, will impose a duty only in favor of the promisee and intended third-party beneficiaries and mere inaction, without more, establishes only a cause of action for breach of contract." *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 226 (1990). By contrast, "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Espinal*, 98 N.Y. 2d at 138. The rule has an impressive pedigree tracing back to *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160 (1928), in which then-Judge Cardozo opined that "liability would be unduly and indeed indefinitely extended by this enlargement of the zone of duty." *Id*. at 168.

Travelers argues that Loehmann's and the other tenants were third-party beneficiaries of the 2027's contracts with Chief Fire and High Rise, but the argument is unavailing. In the first place, Travelers's claims are based in tort, not contract. Moreover, if Travelers's were seeking to impose contractual liability, it would be bound by the disclaimers and limitations in the contracts. *See Dunning v. Leavitt*, 85 N.Y. 30, 35 (1881) ("[I]t would be contrary to justice or good sense to hold that [a third-party beneficiary] should acquire a better right against the promisor than the promisee himself had.").

Nevertheless, in certain circumstances, "parties outside a contract are permitted to sue for tort damages arising out of negligently performed or omitted

5

contractual duties." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 586 (1994). In the years since *H.R. Moch* was decided, the Court of Appeals has recognized three such circumstances:

> (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, "launche[s] a force or instrument of harm";
>
> (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties[;] and
>
> (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely.

*Espinal*, 98 N.Y.2d at 140 (quoting *H.R. Moch*, 247 N.Y. at 168, and citing *Eaves Brooks*, 76 N.Y.2d at 226, and *Palka*, 83 N.Y.2d at 589).

*Eaves Brooks*—the source of the second exception—is of particular relevance because it, too, involved claims against companies that had contracted to inspect sprinkler and fire-alarm systems. Weighing various policy concerns, the Court of Appeals held that the contracts did not give rise to tort liability to a tenant whose property was damaged by water when the systems malfunctioned:

> [N]othing in our decision precludes plaintiff from seeking damages from the building's owners, and the owners and plaintiff are both in a position to insure against losses such as those sustained here. The plaintiff and the owners know or are in a position to know the value of the goods stored and can negotiate the cost of the lease and limitations on liability accordingly.
>
> If, on the other hand, [the contractors] were answerable for property damage sustained by one not in contractual privity with them, they

6

> would be forced to insure against a risk the amount of which they may not know and cannot control, and as to which contractual limitations of liability may be ineffective. The result would be higher insurance premiums passed along through higher rates to all those who require sprinkler system and alarm services. In effect, the cost of protection for those whose potential loss is the greatest would be subsidized by those with the least to lose. In this setting, we see no reason to distribute the risk of loss in such a manner.
>
> Furthermore, the prices paid for defendants' services, according to specific language in the contracts, were calculated on the understanding that the risk of loss remained with the building's owners. While plaintiff is not bound by the provisions of a contract to which it is not a party, the limited scope of defendants' undertaking is nonetheless relevant in determining whether a tort duty to others should arise from their performance of the contractual obligations. Moreover, it suggests the need to contain liability within the limits envisioned in the contract in order to keep these services available at an affordable rate.
>
> For these reasons we conclude that [the contractors] had no cognizable duty owing to plaintiff.

76 N.Y.2d at 227; *see also Crum & Forster Speciality Co. v. Safety Fire Sprinkler Corp.*, 405 F. Supp. 2d 223, 229 (E.D.N.Y. 2005) (Block, J.) ("The public policy considerations identified by the Court of Appeals in *Eaves* are equally applicable in the present case.").

Travelers argues that *Eaves Brooks* is distinguishable because the plaintiff in that case suffered water damage, as opposed to damage from an unsuppressed fire. The Court disagrees that this is a material distinction. Both types of damage are the foreseeable consequences of a malfunctioning sprinkler system, but New York

7

law is clear that foreseeability alone does not give rise to a duty. *See Palka*, 83 N.Y.2d at 586 ("On the other hand, the boundaries of duty are not simply contracted or expanded by the notion of foreseeability[.]").

Travelers further argues that, unlike the plaintiff in *Eaves Brooks*, it cannot look to the building owner for compensation because Loehmann's "waived any right of subrogation against the Landlord of the building." Pl.'s Memo. of Law at 15. This is a curious statement, inasmuch as Travelers did sue 2027, although it later dismissed those claims. In any event, that Loehmann's may have agreed to waive claims against its landlord does not change the underlying policy considerations.

Finally, Travelers cites cases in which tort duties were imposed on contractors. A close examination of those cases, however, reveals that each involved one or more of the exceptions. In *Greene v. Simmons*, 786 N.Y.S.2d 517 (1st Dep't 2004), for example, a contractor was held liable for negligence in the installation of a boiler for failing to include a temperature-limiting valve. *See id.* at 518. Such conduct can easily be described as "launch[ing] a force or instrument of harm," *H.R. Moch*, 247 N.Y. at 168, because it actually created the dangerous condition that caused the plaintiff's injury. *Cf. Espinal*, 98 N.Y.2d at 141-42 (describing the first exception as creating liability when a defendant "negligently creates or exacerbates a dangerous condition"). Here, by contrast, there is no claim

that Chief Fire or High Rise actually closed the sprinkler valve or blocked access to it; their alleged failure to discover the problem did not create or increase its danger.

In *All American Moving & Storage, Inc. v. Andrews*, 949 N.Y.S.2d 17 (1st Dep't 2012), another case cited by Travelers, the First Department applied the second exception because there was an issue of fact as to whether the plaintiffs "detrimentally relied on [a contractor's] continued performance of its contractual duties" to inspect a sprinkler system. *Id.* at 20.[2] The claim of detrimental reliance in that case was far stronger, however, because the plaintiffs were the building owners, who had required their tenant to maintain the sprinkler system. Thus, the plaintiffs relied on the tenant's inspection contract to discharge their own duties under the Fire Code. *See id.* at 19. There can be no analogous claim that Loehmann's would have conducted its own inspection of AGG's premises and, indeed, the entire building. Instead, Travelers argues that Loehmann's would have demanded 2027 take corrective action. But that simply assumes—without factual support—that the closed valve would have been discovered had 2027 not hired Chief Fire and High Rise.

---

[2]The court further held that the plaintiffs were intended third-party beneficiaries of the inspection contract. *See* 949 N.Y.S.2d at 19-20. As explained above, such status would not help Travelers's case.

9

With respect to the third exception, *Cossu v. JWP Inc.*, 661 N.Y.S.2d 929 (Sup. Ct. N.Y. County 1997), involved a municipal contract in which the contractor expressly agreed to "take all reasonable precautions" to protect third parties from injury. *Id.* at 281. It also agreed to obtain insurance and to indemnify New York City. *See id.* at 282. The contracts in this case have precisely the opposite tenor and, accordingly, do not come close to "entirely displac[ing] [2027's] duty to maintain the premises safely." *Palka*, 83 N.Y.2d at 589.

The Second Department's terse decision in *Alsaydi v. GSL Enterprises, Inc.*, 656 N.Y.S.2d 691 (2d Dep't 1997), does not reveal the extent of the contract at issue in that case. In the decision it cited in support of liability, however, the Court of Appeals described the duty of care as flowing from an agreement "to maintain an elevator in safe operating condition." *Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553, 559 (1973). Chief Fire and High Rise did not make an analogous promise to maintain 2027's sprinkler system. In any event, as the Court pointed out in *Crum & Forster*, elevator maintenance raises different policy considerations. *See* 405 F. Supp. 2d at 230 (" The public policy considerations behind this rule [that an elevator maintenance company owes a duty of care to the public] are too obvious to merit comment.").

### III

For the foregoing reasons, the Court concludes that none of the special circumstances justifying the imposition of a tort duty of care based on a contractual obligation is present in this case. Because Chief Fire and High Rise did not owe a duty to Loehmann's, their motions for summary judgment are granted. Travelers's claims against AGG, along with the various cross-claims, shall proceed.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 5, 2014